1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LAURA LESKINEN,

11          Plaintiff,                 No. 2:10-cv-03363 MCE KJN PS

12      v.

13   CAROLYN A. HALSEY, et al.,

14          Defendants.                ORDER and FINDINGS AND
                                       RECOMMENDATIONS
15   _____/

16          Presently before the court is a motion to dismiss for lack of personal jurisdiction

17   and improper venue filed by defendants Joe Nemeth and Pinks, Arbeit & Nemeth (collectively,

18   the "Nemeth Defendants").[1]  (Dkt. No. 42.)  The undersigned heard the Nemeth Defendants'

19   motion on its law and motion calendar on September 8, 2011.  Attorney Charles Coleman

20   appeared at the hearing on behalf of the Nemeth Defendants.[2]  Plaintiff, who is proceeding

21   without counsel, appeared and represented herself at the hearing.

22

23          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

24          [2]  In their notice of motion, the Nemeth Defendants and their counsel stated that they are
     specially appearing in this court for the purpose of challenging jurisdiction and venue in this district.
25   The distinction between special and general appearances has been abolished in federal court.  See
     SEC v. Wencke, 783 F.2d 829, 832 n.3 (9th Cir. 1986); Wright v. Yackley, 459 F.2d 287, 291 (9th
26   Cir. 1972).

                                            1

1    The undersigned has considered the briefs, oral arguments, and appropriate

2   portions of the record in this case and, for the reasons stated below, recommends that the Nemeth

3   Defendants' motion to dismiss be granted in part and denied in part as moot.  Specifically, the

4   undersigned recommends that the Nemeth Defendants' motion to dismiss for improper venue be

5   granted, but that those defendants' motion to dismiss for lack of personal jurisdiction be denied

6   as moot.  Even assuming that this court may exercise personal jurisdiction over the Nemeth

7   Defendants or any other defendants in this action, the Eastern District of California is not a

8   proper venue for this action as to thirteen of the fourteen named defendants, whether analyzed

9   under the general venue statute, 28 U.S.C. § 1391(b), or the special venue provision contained in

10  the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1962(a).

11  This district is an inappropriate one with respect to the one defendant who appeared and arguably

12  waived an objection to venue.  In short, this action concerns a family dispute over a piece of real

13  property located in Suffolk County, New York, and has no connection to the Eastern District of

14  California other than the fact that plaintiff resides in this district.  Plaintiff's residence in the

15  district is insufficient to establish venue in this court and, accordingly, the undersigned

16  recommends that this entire action be transferred to the United States District Court for the

17  Eastern District of New York pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

18  I.    BACKGROUND

19     Plaintiff's 84-page Second Amended Complaint is the operative complaint and

20  alleges eleven claims for relief against fourteen defendants.  (See generally Second Am. Compl.,

21  Dkt. No. 15.)  Briefly stated, plaintiff's claims arise from what is essentially a family dispute

22  over plaintiff's now-deceased grandmother's living trust and will and, in particular, the sale of an

23  asset consisting of real property that belonged to plaintiff's grandmother and is located at 114

24  Griffing Avenue in Westhampton Beach, Long Island, New York.  (See Second Am. Compl.

25  ¶¶ 6-7, 35.)  Plaintiff alleges that the most recently assessed value of the property is $883,000.

26  (Id. ¶ 7.)

1     Plaintiff alleges that her grandmother, Eva Blazek, died on March 14, 2008,

2  "leaving a will on file in Suffolk County, NY naming [plaintiff] beneficiary of a portion of her

3  assets, including her real property." (Second Am. Compl. ¶ 8; see also id. ¶¶ 35, 37.)  Central

4  here, plaintiff alleges that Blazek amended a 1992 living trust through a 1996 will that named

5  plaintiff and her three siblings, who are named defendants,[3] as "per stirpes" beneficiaries of their

6  now-deceased mother's 25% share of Blazek's assets.  (See id. ¶¶ 8-9.)  Thus, plaintiff claims a

7  6.25% (i.e., one quarter of 25%) interest in her grandmother's estate that includes the property in

8  question.  (See id. ¶¶ 39, 138.)  Without analyzing the merits of the action or any factual disputes

9  going to the merits, the undersigned notes that the Nemeth Defendants dispute plaintiff's

10  allegations regarding the disposition of Blazek's assets; the Nemeth Defendants contend that

11  Blazek's interest in the real property was limited to a life estate as of 1992 and that, therefore,

12  Blazek had no interest in the property to convey through the 1996 will.  The correct disposition

13  of Blazek's estate is not relevant to the present motion.

14     Plaintiff alleges that on December 22, 2010, the property in question was

15  unlawfully sold, but that as of February 2011, the current owners are listed as defendant Barbara

16  Allan, defendant Carolyn Halsey, now-dismissed defendant Muriel Murphy, and non-defendant

17  Estate of Elinor Whitman, the last of which is the estate of plaintiff's deceased mother.  (Second

18  Am. Compl. ¶¶ 7, 93, 98.)  Exhibit 3 to plaintiff's pleading, which is a copy of the purported

19  contract for sale of the property, indicates that Todd and Lynn Andrews were the purchasers and

20  that Allan, Halsey, Murphy, and the Estate of Elinor Whitman were the purported sellers.

21  However, plaintiff disputes that any lawful sale actually took place, and she cites her own

22  "Public Records check" conducted in February 2011.  (Id. ¶ 93.)  Plaintiff alleges, in essence, that

23  the named defendants participated in a wide-ranging conspiracy—essentially, a fourteen-member

24  racketeering enterprise—to avoid the lawful probate or administration of Blazek's will and to

25  _____

26  [3] Plaintiff's three siblings are defendants Jennifer McHenry, Douglas Whitman, and Robert
Whitman, Jr.

1  fraudulently deprive plaintiff of plaintiff's 6.25% share of the proceeds from the sale of the real

2  property.  (See id. ¶¶ 6, 45-46, 107.)

3              Plaintiff alleges eleven claims for relief: (1) two claims of a fourteen-defendant

4  conspiratorial "enterprise" in violation of the RICO Act, with claims premised on federal

5  criminal mail fraud and wire fraud statutes (see Second Am. Compl. ¶¶ 116-33); (2) one claim of

6  "common law fraud" (see id. ¶¶ 134-43); (3) one claim for "willful negligence" (see id. ¶¶ 143-

7  54); (4) one claim of negligent misrepresentation (see id. ¶¶ 155-62); (5) five claims of violations

8  of various New York statutes or codes governing the settlements of estates, the probating and

9  administration of wills, breaches of fiduciary duties, and the administration of trusts (see id.

10 ¶¶ 163-208); and (6) one claim of emotional distress (see id. ¶¶ 209-17).  The alleged conspiracy

11 underlies all of plaintiff's claims.  Plaintiff's claims other than those alleged pursuant to New

12 York statutes or codes are alleged against "all defendants."

13             On July 19, 2011, the Nemeth Defendants filed the pending motion to dismiss.

14 Plaintiff filed a timely written opposition to the motion.  Ten of the remaining twelve named

15 defendants have appeared in the action.  Defendant Jennifer McHenry, who like her sister is

16 proceeding without counsel, filed a one-page, hand-written document that can be liberally

17 construed as constituting an answer to the Second Amended Complaint.[4]  Nine other defendants,

18 many of whom are proceeding pro se, have appeared in the action and filed various motions to

19 dismiss, all of which contain challenges to personal jurisdiction and venue in this district.  (See

20

21         [4]  McHenry's notarized filing states:

22             I, Jennifer L. McHenry, am one of the named defendants in a civil suit
           brought by my sister, Laura E. Leskinen.

23
            I deny any and all allegations named in this suit.
24
            I did not receive any monetary compensation from the sale of 114
25        Griffing Ave., Westhampton Beach, NY 11978.

26 (McHenry Answer, Dkt. No. 54.)

1  Dkt. Nos. 26-31, 45, 55, 57, 71-72, 84.)  Those motions are presently set to be heard by the

2  undersigned on October 6, 2011.  (See Order, Aug. 26, 2011, Dkt. No. 83.)  Defendants Mike

3  Carroll and Marketplace Realty have not yet appeared in the action.

4  II.      DISCUSSION

5          The Nemeth Defendants move to dismiss on the grounds that: (1) this court lacks

6  personal jurisdiction over them; and (2) the Eastern District of California is not a proper venue

7  for this action.  The undersigned concludes that as to thirteen of the fourteen defendants, venue is

8  improper and recommends that this action be transferred to the United States District Court for

9  the Eastern District of New York pursuant to 28 U.S.C. § 1406(a).  Regarding defendant Jennifer

10  McHenry, who arguably waived any venue objection by answering the Second Amended

11  Complaint without objecting to venue in this district, the undersigned recommends that the

12  claims against her be transferred to the Eastern District of New York based on the convenience of

13  the parties and witnesses and in the interests of justice pursuant to 28 U.S.C. § 1404(a).  Because

14  the undersigned recommends the transfer of this entire case on venue grounds, the undersigned

15  recommends that the Nemeth Defendants' motion to dismiss for lack of personal jurisdiction be

16  denied as moot.

17      A.      Legal Standards Governing the Challenge to Venue

18          The determination of a proper venue in a civil action is generally governed by

19  28 U.S.C. § 1391.  "In most instances, the purpose of statutorily specified venue is to protect the

20  *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial."

21  Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979).  "When there are multiple

22  parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to

23  each defendant and as to each claim."  Allstar Mktg. Group, LLC v. Your Store Online, LLC,

24  666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (quoting Kelly v. Echols, No. Civ. F05118 AWI

25  SMS, 2005 WL 2105309, *11 (E.D. Cal. Aug. 30, 2005) (unpublished)).

26          Relevant here, 28 U.S.C. § 1391(b), which addresses civil actions where federal

5

subject matter jurisdiction is not premised solely on diversity of citizenship,[5] provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Additionally, relevant to plaintiff's RICO Act claims, 18 U.S.C. § 1965(a) contains a special RICO-related venue provision that states: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which *such* person resides, is found, has an agent, or transacts his affairs" (emphasis added). "[A]s a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes." Go-Video, Inc. v. Akai Elec. Co., 885 F.2d 1406, 1409 (9th Cir. 1989). Accordingly, plaintiff may establish proper venue in the Eastern District of California on the basis of 28 U.S.C. § 1391(b) or 18 U.S.C. § 1965(a).

Once a defendant challenges venue as improper, the plaintiff bears the burden of showing that venue is proper in the district in which the suit was commenced. Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005); see also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). In determining whether venue is proper, the Court may consider facts outside the pleadings, such as declarations and affidavits, and need not accept the pleadings as true. See, e.g., Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004); Richards v. Lloyd's of London, 135 F.3d 1289, 1292 (9th Cir. 1998). The Ninth Circuit Court of Appeals has held that, at least in the context of a challenge to venue based on a forum selection clause, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy,

---

[5] Plaintiff alleges that this court has subject matter jurisdiction over her claims based on diversity of citizenship and the existence of a federal question. (See Second Am. Compl. ¶¶ 1-4.)

1    362 F.3d at 1138.

2            If the district court determines that venue in that district is improper, the court

3    may either dismiss the action without prejudice or, "if it be in the interest of justice," transfer the

4    action to any district in which the action could have originally been brought.  28 U.S.C.

5    § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong

6    division or district shall dismiss, or if it be in the interest of justice, transfer such case to any

7    district or division in which it could have been brought."); see also King v. Russell, 963 F.2d

8    1301, 1304 (9th Cir. 1992).  Additionally, even if venue is proper in the district in which a

9    plaintiff filed the action, "for the convenience of parties and witnesses, in the interest of justice, a

10   district court may transfer any civil action to any other district or division where it might have

11   been brought."  28 U.S.C. § 1404(a); see also Van Dusen v. Barrack, 376 U.S. 612, 634 (1964)

12   ("Although both sections were broadly designed to allow transfer instead of dismissal,

13   [§] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid,

14   whereas, in contrast, [§] 1404(a) operates on the premises that the plaintiff has properly exercised

15   his venue privilege.").

16        B.   Venue Is Not Proper In the Eastern District of California As To 13 Defendants

17           Here, plaintiff has not met her burden to demonstrate that the Eastern District of

18   California is a proper venue for this action.  Before turning to the specific provisions of 28

19   U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), the undersigned sets forth the residence or citizenship

20   information about the parties, as presented by the Second Amended Complaint and other

21   affidavits and declarations filed in this case.  As an initial matter, plaintiff alleges that she is a

22   resident of Sacramento County, California, who previously resided in the State of Maryland.

23   (Second Am. Compl. ¶ 1, 10.)  None of the other defendants is alleged to be a resident or citizen

24   of California.  Because of the number of named defendants, the undersigned provides the

25   following table summarizing information relevant to the venue inquiry:

26   ////

7

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Barbara Allan | Plaintiff alleges that Allan is plaintiff's aunt, and that, among other things, Allan encouraged plaintiff to "agree with the 'deal'" regarding the sale of the property and to "'work something out with [plaintiff's] dad.'" | Plaintiff alleges that at the time of the conspiratorial events in question, Allan's listed address was "111 Seville Blvd, Sayville, NY 11782." (Second Am. Compl. ¶ 17.) A declaration filed by Allan with her motion to dismiss for improper venue states, among other things, that Allan has lived at this address since 1974, has resided in New York since 1954, and has no personal or business interests in California. (See Allan Decl. at 1, Aug. 10, 2011, Dkt. No. 72.) |
| Mike Carroll | Plaintiff alleges that Carroll is a real estate broker with Marketplace Realty, the firm that facilitated the sale of the property in question. (Second Am. Compl. ¶ 19.) | Plaintiff does not allege an address for Carroll in her pleading. However, plaintiff alleges that Carroll works for Marketplace Realty, which has an address for service of process at "3 Sunset Avenue, Westhampton Beach[,] New York 11978." (Second Am. Compl. ¶ 19.) Additionally, documents filed by plaintiff reflect that plaintiff has been attempting to effectuate service of process on Carroll at this New York address. (See Dkt. No. 79.) |
| Carolyn A. Halsey | Plaintiff alleges that Halsey is plaintiff's aunt and the "primary catalyst" in the alleged conspiracy. Plaintiff alleges that Halsey acted as the "Suffolk County, NY Volunteer Administrator of mother Eva Blazek's property." (Second Am. Compl. ¶ 15.) | Plaintiff alleges that at the time of the conspiratorial events in question, Halsey resided at "53 North Paquatuck Avenue, East Moriches, NY 11940." (Second Am. Compl. ¶ 15.) A declaration filed by Halsey with her motion to dismiss for improper venue states, among other things, that Halsey has lived at this address since 1962, has resided in New York since 1954, and has no personal or business interests in California. (See Halsey Decl. at 1, Aug. 4, 2011, Dkt. No. 57, Doc. No. 57-1.) |

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Robert Kelly, Jr. | Plaintiff alleges that Kelly is an attorney licensed by the State of New York, that he is a founding partner in the New York law firm of Kelly & Hulme, P.C., and that he acted as a attorney for the sellers of the property in question.  (Second Am. Compl. ¶ 21.)  Plaintiff alleges that, among other things, Kelly failed to follow relevant "Federal law or New York State Laws regulating the sale of a DECEDENT'S estate."  (Id.) | Plaintiff does not allege an address for Kelly in her pleading.  However, plaintiff alleges that Kelly is a partner in the law firm of Kelly & Hulme, P.C., which has a business address, and address for its agent for service of process, at "323 Mill Road[,] Westhampton Beach, NY 11978." (Second Am. Compl. ¶¶ 21-22.)<br><br>Additionally, a declaration filed by Kelly with Kelly's and Kelly & Hulme, P.C.'s motion to dismiss for lack of personal jurisdiction and improper venue represents, among other things, that Kelly: has been a resident of New York his entire life; is not licensed to practice law in California and has never practiced law or maintained an office in California; has never appeared on behalf of a client in a legal matter pending before a court in California; has never been a party to any litigation in California other than this action; has never had agents or employees in California; has never directed advertising specifically toward California residents; has never maintained a bank account, phone number, phone listing, post office box, or mailing address in California; and has never provided legal services or otherwise transacted business in California.  (Kelly Decl. ¶¶ 2, 4, 6-10, 15, Aug. 26, 2011, Dkt. No. 86.) |

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Kelly & Hulme, P.C. | Plaintiff alleges that Kelly & Hulme, P.C. is New York law firm, and that one of its partners, Robert Kelly, Jr., acted an attorney for the sellers of the property in question.  (Second Am. Compl. ¶ 22.)  Plaintiff premises this law firm's liability on a respondeat superior theory.  (Id.) | Plaintiff alleges that the business address for Kelly & Hulme, P.C. is "323 Mill Road[,] Westhampton Beach, NY 11978," and that the address for its agent for service of process is the same.  (Second Am. Compl. ¶ 22.)<br><br>A declaration filed by defendant Robert Kelly, Jr. with Kelly's and Kelly & Hulme, P.C.'s motion to dismiss for lack of personal jurisdiction and improper venue represents, among other things, that Kelly & Hulme, P.C.: is a New York law firm with its only offices located in New York; has never had any agents or employees in California; has never directed advertising specifically toward California residents; has never maintained a bank account, phone number, phone listing, post office box, or mailing address in California; and has never provided legal services or otherwise transacted business in California.  (Kelly Decl. ¶¶ 5, 9-11, 15, Aug. 26, 2011.) |

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Landstar Title Agency, Inc. | Plaintiff alleges that Landstar Title Agency, Inc. ("Landstar") is a title company that was involved in the sale of the property in question and acted through its Senior Title Attorney, defendant Ken Warner. (See Second Am. Compl. ¶ 26.)  In Warner's declaration on file with the court, Warner declares that his "role was limited to searching and clearing title for the Westhampton House."[6]  (Warner Decl. ¶ 4, July 22, 2011, Dkt. No. 45.)  Plaintiff also alleges that Warner, Landstar, and an employee of Landstar ignored plaintiff's repeated objections to the sale.  (See Second Am. Compl. ¶¶ 26, 72.) | Plaintiff alleges that Landstar's agent for service of process is John F. Burke, who has an address of "170 Old Country Road, Ste 506, Mineola, New York 11501."  (Second Am. Compl. ¶ 26.)  Ken Warner, who is a named defendant, an attorney with Landstar, and a part-owner of Landstar, filed a declaration with Warner's and Landstar's motion to dismiss for improper venue.  (Warner Decl, July 22, 2011, Dkt. No. 45.)  Among other things, Warner declares that: Landstar was founded in 2002 in Mineola, New York; Landstar is a New York corporation with a principle place of business that has always been New York; Landstar "has never maintained offices in California, commenced or defended a lawsuit there, owned or leased any personal or real property in the state; employed a California resident; directed advertising to [a] California resident; or maintained a telephone number, telephone listing, post office box or mailing address or bank account in California."  (Id. ¶¶ 20-23.)  Plaintiff maintains that Landstar refinances mortgages in several states including California, citing ambiguous website search engine results.  (Pl.'s Opp'n to Nemeth Defs.' Mot. to Dismiss at 2.)[7] |

---

[6] The undersigned cites this paragraph of Warner's declaration for context only and does not express an opinion regarding the nature or scope of Warner's or Landstar's role in the property sale.

[7] At the hearing, plaintiff claimed to have written corroboration of refinancing activities of a "division" of Landstar in California.  Plaintiff's corroborative evidence is not presently part of the record.  Even if this evidence is taken as true, it does not alter the undersigned's venue analysis.

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Marketplace Realty | Plaintiff alleges that Marketplace Realty "is a realty company based in New York that facilitated the sale as listing firm in the Enterprise," and she primarily alleges that Marketplace Realty "is liable by not ensuring that Carolyn Halsey or anyone for that matter had legal authority to sell the house." (Second Am. Compl. ¶ 19.) | Plaintiff alleges that the "service for [sic] process address is 3 Sunset Avenue, Westhampton Beach[,] New York 11978." (Second Am. Compl. ¶ 19.)  Additionally, documents filed by plaintiff reflect that plaintiff has been attempting to effectuate service of process on Marketplace Realty at this address.  (See Dkt. No. 79.) |
| Jennifer McHenry | Plaintiff alleges that McHenry is plaintiff's sister and a named beneficiary in Blazek's will. (Second Am. Compl. ¶ 29.)  In essence, plaintiff alleges that McHenry received a payoff or "hush money" for not interfering with the sale of the property in question. | McHenry's answer lists her address as "328 N. Titmus Drive, Mastic, NY 11950." (McHenry Answer at 1, Dkt. No. 54.)  Plaintiff alleges that at the time of the conspiratorial events in question, McHenry's resided at this address.  (Second Am. Compl. ¶ 29.) |
| Joe Nemeth | Plaintiff alleges that Nemeth was a New York attorney who represented the purchasers of the property in question, Todd and Lynn Andrews. (Second Am. Compl. ¶ 23.)  Plaintiff alleges that Nemeth was employed as a partner in the firm Pinks, Arbeit & Nemeth.  (Id.) | Plaintiff does not allege an address for Nemeth in her pleading.  However, plaintiff alleges that Nemeth worked for the law firm of Pinks, Arbeit & Nemeth, which plaintiff alleges is located at "140 Fell Court, Hauppauge, New York 11788." (Second Am. Compl. ¶ 23.)<br><br>Additionally, a declaration filed by Nemeth with his motion to dismiss for improper venue states, among other things, that at all relevant times he was and remains a resident of Suffolk County, New York; maintains professional offices in Suffolk County, New York; has resided and worked only in New York since 1977; has no agents or employees in California; and is not licensed to practice law in California. (See Nemeth Decl. ¶¶ 5-9, 12-15, July 15, 2011, Dkt. No. 42.) |

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Pinks, Arbeit & Nemeth | Plaintiff alleges that Pinks, Arbeit & Nemeth is law firm for whom defendant Joe Nemeth worked at the time of the sale of the property. (See Second Am. Compl. ¶¶ 23-24.) Plaintiff premises this law firm's liability on a respondeat superior theory.  (Id. ¶ 24.) | Plaintiff alleges that Pinks, Arbeit & Nemeth is located at "140 Fell Court, Hauppauge, New York 11788." (Second Am. Compl. ¶¶ 23-24.) Additionally, a declaration filed by Joe Nemeth with the pending motion to dismiss for improper venue states, among other things, that at the time plaintiff contacted Joe Nemeth, the law firm was a partnership organized under the laws of the State of New York, had its principal and only place of business in New York, and has "never maintained offices in California, commenced or defended a lawsuit there, owned or leased any personal or real property in the state; employed a California resident; . . . been affiliated with any attorney licensed to practice in California . . . ." (See Nemeth Decl. ¶¶ 9, 11, 18-19, July 15, 2011.) |

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Ken Warner | Plaintiff alleges that Warner was a "Senior Title Attorney" operating within the conspiracy and that he was the "lynchpin" of the conspiracy. (Second Am. Compl. ¶ 25.)  Although plaintiff's allegations are somewhat unclear, Warner is alleged to have worked for Landstar Title Agency, Inc., which was involved in the sale of the property. (Id.)  In Warner's declaration on file with the court, Warner declares that his "role was limited to searching and clearing title for the Westhampton House."[8] (Warner Decl. ¶ 4, July 22, 2011, Dkt. No. 45.)  Plaintiff also alleges that Warner, Landstar, and an employee of Landstar ignored plaintiff's repeated objections to the sale. (See Second Am. Compl. ¶¶ 26, 72.) | Plaintiff alleges that Warner's business address "at the time of the Enterprise" was at Landstar's office located at "170 Old Country Road, Ste 506, Mineola, New York 11501." (Second Am. Compl. ¶ 25.)  Plaintiff also alleges that Warner is licensed to practice law in California. (Id.)<br><br>In a declaration filed by Warner with Warner's and Landstar's motion to dismiss for improper venue, Warner declares that at all relevant times, he was a resident of Nassau, New York, and maintained professional offices in Mineola, New York. (Warner Decl. ¶¶ 5-6, 12, July 22, 2011.)  Warner confirms in his declaration that he attended law school in California and has been licensed to practice law in California since 1993. (Id. ¶¶ 8-9.)  However, Warner further declares that: he has never practiced law in California; does not maintain any clients in California; has never appeared on behalf of a client in any legal matter pending before a court in California; has not been a party to any litigation in California other than the present case; has never had any agents or employees in California; has never had an office in California; has never had a bank account, phone number, phone listing, post office box, or mailing address in California; has never leased or owned property in California; has never directed advertising specifically toward California residents; and has never transacted business in California. (Id. ¶¶ 8, 10-11, 13-16, 18.) |

---

[8] The undersigned cites this paragraph of Warner's declaration for context only and does not express an opinion regarding the nature or scope of Warner's or Landstar's role in the property sale.

| Defendant | General Role In The Conspiracy | Residence/Citizenship Information |
|---|---|---|
| Robert Whitman, Sr. | Plaintiff alleges that Robert Whitman, Sr. is plaintiff's father. (Second Am. Compl. ¶ 18.)  She alleges that her father participated in the conspiracy "via his communications" and by, among other things, signing the contract for sale of the property in question on behalf of the Estate of Elinor Whitman.  (Id. ¶¶ 18, 48.)  Plaintiff alleges that her father was personally enriched by the enterprise.  (Id. ¶ 18; see also id. ¶¶ 53, 64.) | Plaintiff alleges that the current mailing address for Robert Whitman, Sr. is "23400 Abercorn Lane, Land O Lakes, FL 34639."  (Second Am. Compl. ¶ 18.)  A declaration filed by Robert Whitman, Sr. with his motion to dismiss for improper venue states, among other things, that he has lived at this address since 2004, has resided in Florida since 2000, has lived only in the States of Florida, Maryland, and West Virginia since 1967, and has no personal or business interests in California.  (See Robert Whitman, Sr. Decl. at 1, July 8, 2011, Dkt. No. 29.) |
| Robert Whitman, Jr. | Plaintiff alleges that Robert Whitman, Jr. is plaintiff's brother and a named beneficiary in Blazek's will.  (Second Am. Compl. ¶ 28.)  Plaintiff alleges that, among other things, Robert Whitman, Jr. attempted to facilitate the sale of the property and was listed as the personal representative of the Estate of Elinor Whitman on the sales contract for the property in question.  (Id. ¶¶ 28, 65, 75-78.) | Plaintiff alleges that at the time of the conspiratorial events in question Robert Whitman, Jr. resided at "505 Second Avenue, SE, Lutz, FL 33549."  (Second Am. Compl. ¶ 28.)  A declaration filed by Robert Whitman, Jr. with his motion to dismiss for improper venue states, among other things, that he has lived at this address since 1993, has resided in Florida since 1974, and has no personal or business interests in California.  (See Robert Whitman, Jr. Decl. at 1, July 8, 2011, Dkt. No. 28.) |
| Douglas Whitman | Plaintiff alleges that Douglas Whitman is plaintiff's brother and a named beneficiary in Blazek's will.  (Second Am. Compl. ¶ 27.)  In essence, plaintiff alleges that, among other things, Douglas Whitman received a payoff or "hush money" for not interfering with the sale of the property in question and signed a power of attorney in connection with the sale of the New York property.  (Id. ¶¶ 27, 94.) | Plaintiff alleges that Douglas Whitman currently resides at "45 Trudy Drive, Sykesville, MD 21784," and did so at all relevant times.  (Second Am. Compl. ¶ 27.)  A declaration filed by Douglas Whitman with his motion to dismiss for improper venue states, among other things, that he has lived at this address since 2005, resided in Maryland from 1967 to 1979 and then from 1980 to present, has no personal or business interests in California, but that he lived in California for one year between September 1979 and September 1980.  (See Douglas Whitman Decl. at 1, July 31, 2011, Dkt. No. 55.) |

////

1    Turning to the venue statutes at issue, the undersigned first addresses whether

2  venue in the Eastern District of California is proper under the general venue statute, 28 U.S.C.

3  § 1391(b).  Plaintiff completely failed to address whether venue in this district is proper on the

4  basis of section 1391(b) and its three subsections.  The undersigned then addresses whether

5  venue in this district is proper under the RICO Act's special venue provision.

6    1.    The General Venue Statute, 28 U.S.C. § 1391(b)

7    In regards to the general venue statute, 28 U.S.C. § 1391(b)(1) provides that

8  where jurisdiction is not founded solely on diversity of citizenship, venue is proper in "a judicial

9  district where any defendant resides, *if all defendants reside in the same State*" (emphasis added).

10  Here, venue in this district cannot be premised on section 1391(b)(1) because, as demonstrated

11  by the table above, not all defendants reside in the same state.  Although eleven defendants reside

12  in the State of New York, defendants Robert Whitman, Sr. and Robert Whitman, Jr. reside in the

13  State of Florida, and defendant Douglas Whitman resides in the State of Maryland.  In any event,

14  all defendants do not reside in the same state, and plaintiff does not allege or argue that any

15  defendant resides in California.

16    Next, 28 U.S.C. § 1391(b)(2) provides that where jurisdiction is not founded

17  solely on diversity of citizenship, venue is proper in "a judicial district in which a substantial part

18  of the events or omissions giving rise to the claim occurred, or a substantial part of property that

19  is the subject of the action is situated."  This section does not provide for proper venue in this

20  district.  It is undisputed that the property that is the subject of this action is located in the State

21  of New York, which is plainly not within the Eastern District of California.  Additionally, a

22  substantial part of the alleged events or omissions giving rise to plaintiff's claims did not occur in

23  this district.  At least five of plaintiff's eleven claims concern whether Eva Blazek's estate was

24  properly probated under New York law in a New York court.  All of plaintiff's claims ultimately

25  concern the sale of a piece of real property that is located in New York, and the purchasers and

26  the vast majority of the sellers reside in New York; none of them is alleged to reside in the

16

1   Eastern District of California.  Moreover, the title company and the attorneys for the sellers and

2   the purchasers are located in New York.  Although not argued by plaintiff, the only potential

3   events that occurred within this district concern plaintiff's telephone calls regarding the sale of

4   the property and her transmission and receipt of facsimiles, e-mails, and text messages regarding

5   the sale.  The undersigned concludes that these communications cannot reasonably be considered

6   "substantial," especially in light of the other allegations concerning the sale of the property

7   contained in the Second Amended Complaint.

8          The final subsection of the general venue statute, 28 U.S.C. § 1391(b)(3),

9   provides that where jurisdiction is not founded solely on diversity of citizenship, venue is proper

10  in "a judicial district in which any defendant may be found, *if there is no district in which the*

11  *action may otherwise be brought*" (emphasis added).  As to this subsection of the general venue

12  statute, plaintiff failed to argue that there is no other judicial district in which this action could

13  have been brought.  In the context of her arguments regarding personal jurisdiction, however,

14  plaintiff briefly and conclusorily contends that "there is no other district in which a court will

15  have personal jurisdiction over **all** alleged coconspirators."  (Pl.'s Opp'n to Nemeth Defs.' Mot.

16  to Dismiss at 25.)  Contrary to plaintiff's contention, however, the undersigned concludes that the

17  Eastern District of New York, which encompasses Suffolk County and Nassau County, is a

18  federal district where this action could have been brought, i.e., the requirements of subject matter

19  jurisdiction, personal jurisdiction, and venue would be have been satisfied in the Eastern District

20  of New York at the time of filing the action.

21         First, the Eastern District of New York may exercise subject matter jurisdiction

22  over plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a) because plaintiff alleges

23  federal claims and the existence of federal question jurisdiction.

24         Second, venue is proper in the Eastern District of New York pursuant to 28

25  U.S.C. § 1391(b)(2) because the property that is at the heart of this dispute is located in that

26  district.

1    Third, the Eastern District of New York could exercise personal jurisdiction over

2 all of the named defendants.  That court could doubtlessly exercise personal jurisdiction over the

3 following eleven named defendants because the record supports that those defendants are citizens

4 of, are domiciled in, or regularly transact business in the State of New York: Allan; Carroll;

5 Halsey; Kelly; Kelly & Hulme, P.C.; Landstar; Marketplace Realty; McHenry; Nemeth; Pinks,

6 Arbeit & Nemeth; and Warner.  As to the remaining defendants—Robert Whitman, Sr., Robert

7 Whitman, Jr., and Douglas Whitman, whose declarations strongly suggest that they are not

8 domiciled in New York—plaintiff's allegations regarding their involvement in the sale of the

9 subject property demonstrate, at least facially, that the Eastern District of New York can exercise

10 personal jurisdiction over them under the applicable two-step test for personal jurisdiction.[9]  As

11 an initial matter, New York's long-arm statute reaches the three Whitman defendants because, at

12 a minimum, those defendants are alleged to have transacted business in New York; namely, the

13 alleged execution of the contract for sale of the New York property, the alleged receipt of funds

14 from that transaction, and the alleged execution of related documents such as powers of attorney.

15 See N.Y. C.P.L.R. § 302(a)(1) (McKinney 2010) (providing that "a court may exercise personal

16 jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through

17 an agent: . . . 1. transacts any business within the state or contracts anywhere to supply goods or

18

19    [9]    The Second Circuit Court of Appeals recently described the proper analysis for determinations of personal jurisdiction over non-domiciliaries as follows:

20        To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis.

21    First, we apply the forum state's long-arm statute. . . .

22        If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process

23    Clause of the United States Constitution. This analysis has two related components: the "minimum contacts" inquiry and the "reasonableness"

24    inquiry.  With respect to minimum contacts, we must determine whether the defendant has sufficient contacts with the forum state to justify the court's

25    exercise of personal jurisdiction.

26 Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir. 2010) (citations omitted).

1   services in the state").  Additionally, the exercise of specific personal jurisdiction over the

2   Whitmans would facially meet the minimum contacts and reasonableness tests of due process

3   because those defendants purposefully availed themselves of the benefits of New York's real

4   estate, contract, and estate laws and derived a benefit from the sale of the New York property.

5   Finally, Robert Whitman, Sr., Robert Whitman, Jr., and Douglas Whitman filed motions to

6   dismiss for improper venue that seek dismissal and also request that, if appropriate, the court

7   enter an order "remanding the action to the appropriate court in the State of New York."  R.

8   Whitman, Jr.'s Mot. to Dismiss for Improper Venue at 4, Dkt. No. 28; accord R. Whitman, Sr.'s

9   Mot. to Dismiss for Improper Venue at 4, Dkt. No. 29; D. Whitman's Mot. to Dismiss for

10  Improper Venue at 4, Dkt. No. 55.)  The Whitmans' representations regarding the remand of this

11  action to a New York court essentially constitute consents to the exercise of personal jurisdiction

12  over these defendants by a court in the State of New York.[10]

13          The Eastern District of New York is a forum in which this action could have been

14  brought.  In light of the foregoing analysis, the undersigned concludes that even if plaintiff had

15  directly argued that 28 U.S.C. § 1391(b)(3) provides a basis for proper venue in the Eastern

16  District of California, such an argument would not be well-taken.

17                  2.      The RICO Act's Special Venue Provision, 18 U.S.C. § 1965(a)

18          The undersigned next addresses whether the RICO Act's special venue provision

19  provides a basis for proper venue in this district.  The relevant provision, 18 U.S.C. § 1965(a),

20  states: "Any civil action or proceeding under this chapter against any person may be instituted in

21  the district court of the United States for any district in which such person resides, is found, has

22

23          [10] Plaintiff has expressed concern that if this case is transferred to the Eastern District of New
24  York, her father and brothers will reverse course and contend that a New York federal court lacks
    personal jurisdiction over them.  Although the Whitman defendants would be hard-pressed to argue
    that a federal district court in New York lacks personal jurisdiction over them, especially given their
25  requests for a remand to a New York court, the question of whether a federal court sitting in New
    York has personal jurisdiction over the Whitman defendants is ultimately the province of a judge or
26  judges of the Eastern District of New York.

1  an agent, or transacts his affairs."  Also implicated by plaintiff's RICO Act-based arguments is

2  18 U.S.C. § 1965(b), which provides: "In any action under section 1964 of this chapter in any

3  district court of the United States in which it is shown that the ends of justice require that other

4  parties residing in any other district be brought before the court, the court may cause such parties

5  to be summoned, and process for that purpose may be served in any judicial district of the United

6  States by the marshal thereof."

7          Plaintiff failed to specifically address the venue provision in 18 U.S.C. § 1965(a).

8  Accordingly, she has not met her burden to establish venue through that subsection.  See, e.g.,

9  Damiani v. Adams, 657 F. Supp. 1409, 1416 (S.D. Cal. 1987) ("The initial requirement which

10  must be met to confer personal jurisdiction in a RICO action is set out in 18 U.S.C. § 1965(a).").

11          Instead, plaintiff's written opposition references the Nemeth Defendants'

12  challenge to the propriety of venue in this district, but does not address the substantive standards

13  that govern venue.  Plaintiff frames her opposition in terms of personal jurisdiction and

14  specifically relies on "the ends of justice" provision in 18 U.S.C. § 1965(b) as the basis for

15  personal jurisdiction in this district.  At the outset, the undersigned notes that the analyses of

16  personal jurisdiction and venue are separate and distinct analyses, even when a statute conferring

17  nationwide service of process is involved.  See Action Embroidery Corp. v. Atl. Embroidery,

18  Inc., 368 F.3d 1174, 1178-79 (9th Cir. 2004) ("It has long been recognized that the question of a

19  federal court's competence to exercise personal jurisdiction over a defendant is distinct from the

20  question of whether venue is proper.")

21          In any event, the undersigned considers plaintiff's "ends of justice" argument as

22  being addressed to venue as well as personal jurisdiction because section 1965(b) arguably

23  impacts the question of venue as well as personal jurisdiction and service of process.  Plaintiff

24  offers three arguments insofar as the "ends of justice" are concerned.  First, she argues that she

25  would be prejudiced if forced to litigate in New York because she perceives that some of the

26  defendants have familiarity with, have strong connections within, or are "legally insulated" in the

20

1    New York legal system.  (Pl.'s Opp'n to Nemeth Defs.' Mot. to Dismiss at 4-5.)  At the hearing,

2    plaintiff ardently argued these points in an effort to prevent the transfer of this case, all but

3    questioning the impartiality of the judges of New York's federal bench.  Second, plaintiff

4    contends that she should be permitted to litigate in this district because she was told to contact

5    her local sheriff's department when she requested assistance from New York's Office of the

6    Attorney General; plaintiff contends that this response was patronizing.  (Id. at 5 & Ex. 5.)

7    Third, plaintiff argues that the Suffolk County Sheriff's Department has yet to effectuate service

8    of process on defendants Carroll and Marketplace Realty, and that this alleged inaction shows a

9    lack of good faith on the part of yet another entity in New York.  (Id. at 5.)

10             Even considering plaintiff's arguments as responsive to the "end of justice"

11   provision of the RICO Act, plaintiff has failed to demonstrate an essential element of that test.  In

12   Butchers Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535 (9th Cir. 1986), the Ninth Circuit

13   Court of Appeals addressed the nationwide service aspect of 18 U.S.C. § 1965(b) and stated that

14   "merely naming persons in a RICO complaint does not, in itself, make them subject to section

15   1965(b)'s nationwide service provisions."  Id. at 539.  The Court of Appeals also imposed at

16   least two requirements or limitations on the use of section 1965(b):

17                     As section 1965(b) makes clear, the right to nationwide service in RICO
                      suits is not unlimited.  For nationwide service to be imposed under section
18                    1965(b), the court must have personal jurisdiction over at least one of the
                      participants in the alleged multidistrict conspiracy *and the plaintiff must*
19                    *show that there is no other district in which a court will have personal*
                      *jurisdiction over all of the alleged co-conspirators*.
20

21   Id. (emphasis added).

22             Here, the undersigned assumes, without deciding, that plaintiff satisfactorily

23   alleged a plausible multi-district conspiracy.  Plaintiff satisfied the requirement that the court

24   have personal jurisdiction over at least one of the participants because McHenry appeared in this

25   court and filed what is arguably an answer that did not preserve the defenses of lack of personal

26   jurisdiction and improper venue.  Nevertheless, and as detailed above, plaintiff has not met her

21

1    burden to demonstrate that no other district in which a court will have personal jurisdiction over

2    all of the alleged co-conspirators.  Accordingly, plaintiff may not use 18 U.S.C. § 1965(b) to

3    establish proper venue in this court.

4                    3.    Dismissal or Transfer of the Action

5                    Having determined that venue is not proper in the Eastern District of California,

6    the undersigned next considers whether this action should be dismissed without prejudice or

7    transferred to the U.S. District Court for the Eastern District of New York.  See 28 U.S.C.

8    § 1406(a).  Although the Nemeth Defendants have not formally requested a transfer of this action

9    to the Eastern District of New York,[11] a district in which this action could have been originally

10   brought, the undersigned recommends that the action be so transferred in the interests of justice.[12]

11   First, transfer of the action avoids potentially harsh prejudice to plaintiff in terms of the running

12   of the applicable statutes of limitation.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962);

13   Minnette v. Time Warner, 997 F.2d 1023, 1026-27 (2d Cir. 1993).  Second, transfer of the action,

14   as opposed to dismissal, would spare plaintiff the delay and expense attendant to refiling this

15   action and again effectuating service of process on fourteen defendants, most of whom were

16   served in the State of New York.  Accordingly, the undersigned recommends that this action be

17   transferred to the Eastern District of New York.

18   ////

19   _____

20        [11]  At the hearing, counsel for the Nemeth Defendants expressed that although the Nemeth
     Defendants would prefer that this case be dismissed, they do not oppose transfer of this case as an
     alternative to dismissal.

21

22        [12]  If this case is transferred and the assigned judges of the United States District Court for
     the Eastern District of New York disagree with this court's assessment of the exercise of personal
23   jurisdiction over the Whitman defendants, who are domiciled in Maryland or Florida, they may sever
     the Whitman defendants from the action and dismiss those defendants or transfer those defendants
24   to a court or courts that may exercise personal jurisdiction over those defendants.  See Wild v.
     Subscription Plus, Inc., 292 F.3d 526, 531 (7th Cir. 2002) (holding that "there is no absolute bar to
25   the transfer of a multidefendant suit to a district in which one of the defendants cannot be served,"
     and suggesting that a defendant in a multidefendant suit who cannot be served may be severed from
26   the rest of the suit and the suit against him or her be either dismissed or transferred), cert. denied,
     537 U.S. 1045 (2002).

1    C.    Transfer Is Appropriate Even Assuming that Venue is Proper in this District

2          Finally, the undersigned alternatively addresses whether, assuming venue is

3    proper in this district, the action should be transferred for the convenience of the parties and the

4    witnesses in this case, as provided in 28 U.S.C. § 1404(a).  The undersigned recognizes that

5    McHenry appeared in this action and filed what amounts to an answer that does not assert a

6    defense of improper venue.  Accordingly, she very likely waived such a defense, and venue in

7    this district would arguably be proper as to her.  See Leroy, 443 U.S. at 180 (noting that the

8    venue is a personal privilege of the defendant that can be waived); see also Fed. R. Civ. P.

9    12(h)(1) (providing that a party waives the defense of improper venue by failing to include the

10   defense in, among other things, a responsive pleading).  Given such a circumstance, the

11   undersigned recommends that the portion of plaintiff's action that pertains to McHenry be

12   transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), as opposed to

13   28 U.S.C. § 1406(a).  Moreover, if the district judge assigned to this action disagrees with the

14   analysis above and concludes that the Eastern District of California is a proper venue for the

15   entire action, the undersigned recommends, in the alternative, that the entire action be transferred

16   to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

17         A trial judge may exercise his or her discretion and transfer an action to another

18   district where the action could have been brought for the convenience of the parties and

19   witnesses and in the interests of justice.  See 28 U.S.C. § 1404(a); see also Stewart Org., Inc.,

20   Ricoh Corp, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the

21   district court to adjudicate motions for transfer according to an 'individualized, case-by-case

22   consideration of convenience and fairness.'") (citing Van Dusen, 376 U.S. at 622).  In addition to

23   considering the convenience of the parties, the convenience of the witnesses, and the interests of

24   justice, the district court may consider several factors in evaluating such a discretionary transfer,

25   including:

26         (1) the location where the relevant agreements were negotiated and

23

1  executed, (2) the state that is most familiar with the governing law, (3) the
2  plaintiff's choice of forum, (4) the respective parties' contacts with the
   forum, (5) the contacts relating to the plaintiff's cause of action in the
3  chosen forum, (6) the differences in the costs of litigation in the two
   forums, (7) the availability of compulsory process to compel attendance of
   unwilling non-party witnesses, and (8) the ease of access to sources of
4  proof.

5  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

6          As to plaintiff's action, the Eastern District of New York is a more convenient

7  forum for several reasons.  First, the convenience of the parties and witnesses very strongly

8  favors the transfer of this action to the Eastern District of New York.  As noted above, eleven of

9  the fourteen defendants are domiciled in, reside in, or are citizens of, the State of New York.  The

10 other three defendants, who live on the East Coast and reside in Maryland or Florida, have

11 essentially consented to this action being tried in the State of New York.  Plaintiff alleges that

12 two other potential witnesses who plaintiff also labels as potential defendants—Todd Andrews

13 and Lynn Andrews—reside in the State of New York.  (See Second Am. Compl. ¶¶ 7, 33-34.)

14 Plaintiff alleges that an additional potential witness, Todd Miller, resides in the State of

15 Maryland.[13]  (Id. ¶ 32.)  It is entirely reasonable to assume, based on the allegations in the Second

16 Amended Complaint and the zeal with which plaintiff has pursued this action, that plaintiff

17 intends to take the depositions of, and call as witnesses at trial, all fourteen defendants or their

18 representatives, as well as the non-party witnesses already identified by plaintiff.  Transfer of this

19 action to a New York court would greatly ease logistical and cost burdens with respect to

20 discovery in this case and the trial.

21         Second, nearly all of the alleged events that give rise to plaintiff's claims occurred

22 in the State of New York.  The sale of the property at issue occurred in New York and was

23 negotiated and carried out by attorneys and real estate professionals that practice in, are licensed

24 by, or have principal places of business in, the State of New York.

25
26     [13]  Plaintiff alleges that one former defendant and potential witness, Muriel Murphy, resides
   in the State of Texas.  (Second Am. Compl. ¶ 16.)

24

1       Third, a federal district court sitting in New York will likely have far greater

2  familiarity with the law governing at least five of plaintiff's eleven claims.  Plaintiff's sixth

3  through tenth claims for relief are expressly premised on New York state law.  (Second Am.

4  Compl. ¶¶ 163-208.)

5       The only factor that potentially militates against the transfer is plaintiff's choice of

6  forum.  The undersigned recognizes that substantial weight should ordinarily be given to a

7  plaintiff's desired forum, especially when the plaintiff resides in the desired forum.  See

8  Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985).  However,

9  plaintiff's choice of forum here is largely discounted because none of the events concerning the

10  sale of the property in question, indeed the overwhelming bulk of acts alleged in the Second

11  Amended Complaint, occurred in this forum.  See, e.g., IBM Credit Corp. v. Definitive

12  Computer Servs., Inc., No. C-95-3927 SI, 1996 WL 101172, at *2 (N.D. Cal. Feb. 28, 1996)

13  (unpublished) ("Ordinarily, where the forum lacks any significant contact with the activities

14  alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the

15  plaintiff is a resident of the forum."); In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp.

16  188, 194 (E.D.N.Y. 1994) (recognizing that a "plaintiff's choice of forum is generally entitled to

17  'great weight,' but that "when a plaintiff's chosen forum has no connection to the events which

18  gave rise to the claim for relief, plaintiff's choice of forum is a less weighty consideration")

19  (citations and quotation marks omitted).  And on balance, the other factors outweigh plaintiff's

20  desire to litigate this case in California.[14]  Accordingly, the undersigned recommends that the

21  claims against McHenry be transferred to the Eastern District of New York pursuant to 28 U.S.C.

22  § 1404(a).  Furthermore, if the district judge assigned to this matter disagrees with the

23

24     [14]   At the hearing, plaintiff asserted for the first time that she has a partial, permanent
disability that will make it difficult for her to transport documents across the country.  Plaintiff did
25  not identify her disability at the hearing, and has not done so through a declaration or some other
documentation.  Even assuming the existence of this disability, however, plaintiff's choice of forum
26  and her physical hardship do not outweigh the other factors that favor the transfer of this action.

1   undersigned's conclusion about improper venue in this district, the undersigned alternatively

2   recommends the transfer of this entire action to the Eastern District of New York pursuant to

3   section 1404(a).

4   III.      <u>CONCLUSION</u>

5          For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

6          1.     The Nemeth Defendants' motion to dismiss for improper venue (Dkt.

7   No. 42) be granted, and the Nemeth Defendants' motion to dismiss for lack of personal

8   jurisdiction is denied as moot.

9          2.     This action be transferred to the United States District Court for the Eastern

10   District of New York pursuant to 28 U.S.C. §§ 1404(a), 1406(a).

11          These findings and recommendations are submitted to the United States District

12   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see also</u> E. Dist. Local Rule 304(b).

15   Such a document should be captioned "Objections to Magistrate Judge's Findings and

16   Recommendations."  Any response to the objections shall be filed with the court and served on

17   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

18   Failure to file objections within the specified time may waive the right to appeal the District

19   Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d

20   1153, 1156-57 (9th Cir. 1991).

21          It is FURTHER ORDERED that:

22          1.     The October 6, 2011 hearing on various defendants' motions to dismiss

23   (<u>see</u> Dkt. Nos. 26-31, 45, 55, 57, 71-72) is vacated pending resolution of these findings and

24   recommendations by the assigned district judge.

25          2.     If the district judge assigned to this matter determines that this action

26   should proceed in the Eastern District of California, the undersigned will set a new hearing date

1   and briefing schedule for the motions to dismiss.

2                    IT IS SO RECOMMENDED and ORDERED.

3   DATED:  September 9, 2011

4

5                                      _____
                                       KENDALL J. NEWMAN
6                                      UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26